# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Marc Paul Schachter,

        Petitioner

v.

Jo Gentry, et al.,

        Respondents

Case No. 2:17-cv-01766-JAD-EJY

**Order Denying Petition for Habeas Relief and Closing Case**

Petitioner Marc Paul Schachter was sentenced to 5 to 20 years in Nevada state prison after being found guilty of attempted robbery and declared a habitual criminal.[1] In a four-count petition, Schachter seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that the state district court denied his request for self-representation, law enforcement failed to preserve evidence, and his conviction is invalid.[2] Having carefully evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Schachter's petition, deny him a certificate of appealability, and close this case.

## Background

**A.    The facts underlying Schachter's conviction**[3]

Alejandro Monroy, an asset-protection associate at a Walmart store located in Washoe County, Nevada, testified that on June 9, 2014, he observed Schachter acting suspiciously, so he surveilled him throughout the store. Schachter was seen putting a backpack, a heating pad, an

---

[1] ECF No. 15-21 at 3.

[2] ECF No. 5.

[3] These facts are taken from the trial transcript. ECF Nos. 14-8, 14-10. For simplicity's sake, I cite to these exhibits generally for this entire fact section.

electric "icy hot" pad, and two boxes of hair dye into his shopping cart. Schachter then loaded the heating pad, electric "icy hot" pad, and one box of hair dye into the backpack. Schachter put the backpack on and took the second box of hair dye to a check-out counter in the outdoor-living department of the store. Schachter paid for that hair dye and another item and left the store.

Monroy followed Schachter outside the store, and when Monroy tried to identify himself and ask about the items in Schachter's backpack, Schachter pushed him. Monroy requested that Schachter reenter the store, but Schachter continued to attempt to push past Monroy. Monroy and Schachter continued this altercation for four to five minutes before Monroy gained possession of the backpack.

Monroy's coworker, Anna Young, called police dispatch during the altercation. After the police arrived, Young took the backpack to a customer-service manager to scan the items, including the backpack, to get a total dollar amount of what Schachter had stolen. The total amount of the items was $99.61. The items were then taken back to customer service to be restocked for sale.

**B.     Procedural history**

Schachter was charged with attempted robbery, burglary, and being a habitual criminal.[4] Following a jury trial, Schachter was found guilty of attempted robbery.[5] The state district court declared Schachter a habitual criminal and sentenced him to 5 to 20 years in prison.[6] Schachter

---

[4] ECF No. 13-8.
[5] ECF No. 14-11.
[6] ECF No. 15-21 at 3.

appealed, and the Nevada Supreme Court affirmed on August 10, 2016.[7] Remittitur issued on September 7, 2016.[8] Schachter did not file a state habeas corpus petition.

Schachter filed a federal habeas corpus petition on October 18, 2017.[9] The respondents moved to dismiss Schachter's petition on February 22, 2018.[10] I granted the motion in part,[11] finding that several claims were unexhausted.[12] I then ordered Schachter to decide how to proceed,[13] and he abandoned his unexhausted claims.[14] The respondents answered the remaining claims in Schachter's petition,[15] and Schachter replied.[16]

In Schachter's remaining grounds for relief, he alleges the following violations of his federal constitutional rights:

1. The state district court denied his timely request to represent himself at trial.

2. Law enforcement failed to preserve the backpack that he allegedly stole.

3a. The Nevada Supreme Court unreasonably stated that he did not allege that he did not steal the items that were found in the backpack.

3b. His conviction is invalid because establishing that the backpack was not stolen would have impeached Monroy's credibility.[17]

---

[7] ECF No. 15-28.
[8] ECF No. 15-29.
[9] ECF No. 5.
[10] ECF No. 12.
[11] ECF No. 18.
[12] *Id.* at 9.
[13] *Id.* at 8.
[14] ECF No. 19.
[15] ECF No. 23.
[16] ECF No. 24.
[17] ECF No. 5.

**Discussion**

**A.   Legal standard for federal habeas review**

Federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act, also known as "AEDPA."  If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[18]  A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[19]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[20]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[21]  The "objectively unreasonable" standard is difficult to satisfy;[22] "even 'clear error' will not suffice."[23]

---

[18] 28 U.S.C. § 2254(d).

[19] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[20] *White v. Woodall*, 572 U.S. 415, 424–27 (2014).

[21] *White*, 572 U.S. at 424–27.

[22] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[23] *Wood v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Under AEDPA, the bar is high,[24] and federal habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[25]  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[26]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[27]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[28]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[29]  The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[30] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[31]

---

[24] As the United States Supreme Court acknowledged in *Harrington v. Richter,* 562 U.S. 86, 102 (2011), "If this standard is difficult to meet, that is because it was meant to be."

[25] *Harrington*, 562 U.S. at 102.

[26] *Id.* at 103.

[27] *Id.* at 101.

[28] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[29] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[30] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[31] 28 U.S.C. § 2254(e)(1).

**B.      Evaluating Schachter's remaining claims**

Schachter claims that the state district court denied his request for self-representation, law enforcement failed to preserve evidence, and his conviction is invalid.[32]  I now address these three remaining claims.

### *1.      Grounds 1 and 3a—self-representation and the video surveillance*

In Ground 1, Schachter alleges that his federal constitutional rights were violated when the state justice court and state district court denied, delayed, and failed to respect his timely request to represent himself at trial.[33]  And in Ground 3a, Schachter argues that, in deciding this claim, the Nevada Supreme Court unreasonably stated that he did not allege that he did not steal the items that were found in the backpack.[34]

In affirming Schachter's judgment of conviction, the Nevada Supreme Court held:

> On June 9, 2014, appellant Marc Schachter was arrested after attempting to steal from Walmart a backpack, heat pad, Icy Hot electrical pad, and a box of hair dye. On June 23, 2014, Schachter requested that he be allowed to represent himself and his request was granted on July 24.  On that day, Schachter asked for investigative services, which court-appointed standby counsel arranged to provide around July 31.  Schachter filed a motion to dismiss the amended information arguing that the delays in granting his requests resulted in the loss of exculpatory surveillance video footage showing him entering the Walmart wearing the stolen backpack because the surveillance video was destroyed, per store policy, before the investigator issued the subpoena for the video.  The district court denied the motion and Schachter appeals.
>
> This court reviews a district court's decision to grant or deny a motion to dismiss for an abuse of discretion. *Hill v. State*, 123 Nev. 546, 550, 188 P.3d 51, 54 (2008).  On appeal, Schachter argues that the cumulative delays by the justice and district court in granting his requests for self-representation and for reasonable investigative services resulted in a denial of his right to self-representation and due process in that he was denied the means of developing and presenting an adequate defense.  Citing California law, Schachter argues that pro se defendants

---

[32] ECF No. 5.

[33] *Id.* at 3.

[34] *Id.* at 12.

6

have "the right to reasonably necessary defense services." *People v. James*, 136 Cal. Rptr. 3d 85, 93 (Ct. App. 2011) (internal quotation marks omitted) (recognizing this right under the Sixth Amendment). However, even if we were to recognize this right, Schachter must demonstrate that he was prejudiced by the failure to provide him with the reasonably necessary services to prepare his defense. *See id.* (providing that to be entitled to reversal on this issue, "a defendant must show both error and resulting prejudice"); *People v. Jenkins*, 997 P.2d 1044, 1141 (Cal. 2000) (expressing concern that the trial court refused to allow defendant to interview an out-of-state expert witness before pro se defendant called him to testify, but "[a]ssuming error, however, no prejudice appears, because the witness's testimony was excluded as irrelevant").

Here, Schachter has demonstrated that the delay in allowing him to represent himself, followed by the delay in affording him reasonable investigative services, may have resulted in the loss of the surveillance video, which some evidence suggests Walmart may have had but destroyed 60 days after the incident. Even crediting this assertion, Schachter still cannot prevail as he has not shown prejudice. The crime of attempted robbery does not include a threshold monetary valuation and the amount stolen does not affect the sentence. NRS 193.330; NRS 200.380; *see Williams v. State*, 93 Nev. 405, 407, 566 P.2d 417, 419 (1977) ("The State is not required to prove the entire amount or value of property taken in a robbery, only that some property was indeed taken."). Schachter only alleges that the surveillance video would show him entering Walmart with the backpack on—he does not allege that he did not steal the other items found in the backpack after he left the store. An asset[-]protection associate from Walmart testified that he witnessed Schachter put the other items in the backpack. Therefore, even if the surveillance video showed Schachter entering with the backpack, he cannot demonstrate prejudice because he would still be guilty of attempted robbery for the items in the backpack when he exited the store without paying.[35]

I find that the Nevada Supreme Court's rejection of Schachter's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. At Schachter's arraignment on July 17, 2014, counsel was present on behalf of Schachter.[36] Counsel indicated that the state justice court "conducted a *Faretta* canvass" and "found that [Schachter] was competent under *Faretta* to proceed representing

---

[35] ECF No. 15-28 at 2–4.

[36] *See* ECF No. 13-9 at 4.

7

himself."[37]  It appears that this *Faretta* canvass by the state justice court occurred on July 1, 2014,[38] but that the state justice court had denied Schachter's request to represent himself at a hearing held on June 23, 2014.[39]  Because the state district court judge assigned to Schachter's case was gone on July 17, 2014, a different state district court judge presiding over the hearing stated that it was "pretty confident that [the state district court judge assigned to Schachter's case] would want to conduct her own *Faretta* canvass of the defendant."[40]  So Schachter's arraignment was continued to July 24, 2014.[41]

On July 24, 2014, Schachter explained that he requested to represent himself because he felt that "the case [was] better handled by [himself] than the Public Defender's Office" and that his "previous experience with the Washoe County Public Defender's Office ha[d] been horrendous."[42]  The state district court then asked Schachter about his age, his education level, his prior experience and familiarity with legal proceedings, his familiarity with legal research, his health, his medication usage, the number of times he had been incarcerated, and his drug and alcohol abuse.[43]  The state district court also asked Schachter if anyone threatened or coerced him into give up his right to an attorney, if he understood that an attorney would be appointed to represent him, the elements of the charges against him, the possible penalties for the charges against him, and his understanding of the available pleas and possible defense to the charges.[44]

---

[37] *Id.*

[38] *See* ECF No. 13-10 at 13.

[39] *Id.* at 12; *see also* ECF No. 13-1 at 56.

[40] ECF No. 13-9 at 5.

[41] *Id.*

[42] ECF No. 13-10 at 4.

[43] *Id.* at 4–7.

[44] *Id.* at 7–10.

Schachter then indicated that he was "not opposed to a co-counsel or standby counsel."[45] Following further questioning, the state district court allowed Schachter to represent himself and appointed standby counsel:

> it does appear that you understand the nature of the proceedings and that you're voluntarily exercising your right to represent yourself, in spite of my admonishments of you that I think it's a bad idea. I'm telling you right now, you shouldn't do it and it's, honestly, foolhardy for you to do it, especially with these significant penalties that you're facing if you are found guilty. So I am going to allow you to represent yourself, because the constitution tells me that no matter how foolish you are, you have a right to be foolish and you are exercising that right, but I am going to appoint standby counsel, because of our situation with the law library, lack of legal research resources.[46]

"[T]he Sixth and Fourteenth Amendments include a 'constitutional right to proceed *without* counsel when' a criminal defendant 'voluntarily and intelligently elects to do so.'"[47] "While the Constitution 'does not force a lawyer upon a defendant,' . . . it does require that any waiver of the right to counsel be knowing, voluntary, and intelligent."[48] To invoke this right to proceed without counsel, the defendant's request must be timely.[49] Because Schachter's requests to proceed without counsel were granted by the state justice court and the state district court,[50] Schacter fails to demonstrate that his constitutional right to proceed without counsel was violated.[51]

---

[45] *Id.* at 11.

[46] *Id.* at 20–21; ECF No. 13-12.

[47] *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Faretta v. California*, 422 U.S. 806, 807 (1975) (emphasis in original).

[48] *Iowa v. Tovar*, 541 U.S. 77, 87–88 (2004) (internal citation omitted).

[49] *See United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003); *Avila v. Roe*, 298 F.3d 750, 753 (9th Cir. 2002).

[50] *See* ECF No. 13-9 at 4; ECF No. 13-12.

[51] *Faretta*, 422 U.S. at 807.

Regarding Schachter's ancillary argument that the state district court failed to respect his request to represent himself, the United States Supreme Court has explained that, "[i]n determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way."[52]  Indeed, "[t]he *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial."[53]  However, "*Faretta* says nothing about any specific legal aid that the State owes a *pro se* criminal defendant."[54]

Schachter contends that, because he represented himself, he (1) was unable to get the video surveillance footage of him entering the Walmart store, which would have showed that he had the backpack when he entered, and (2) was delayed in getting discovery, which delayed him in reviewing the video surveillance originally collected until after any further footage was erased.[55]  While these facts appear to be true, the Nevada Supreme Court reasonably concluded that Schachter failed to demonstrate that he suffered prejudice.[56]  "[W]hen the Government has

---

[52] *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).

[53] *Id.* at 174.

[54] *Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005).

[55] ECF No. 24 at 5-6.

[56] Schachter argues that the Nevada Supreme Court improperly conducted a harmless-error review regarding his right to self-representation. ECF No. 5 at 5. Schachter is correct that the denial of "the right of self-representation . . . is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *McKaskle*, 465 U.S. at 177 n.8; *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006) (explaining that "the denial of the right of self-representation" is a "'structural defect[ ]'" which "'def[ies] analysis by harmless-error standards'"). However, the Nevada Supreme Court did not conduct a harmless-error review regarding Schacter's right to self-representation; rather, the Nevada Supreme Court evaluated whether Schachter "was prejudiced by the failure to provide him with the reasonably necessary services to prepare his defense." ECF No. 15-28 at 3.

been responsible for delay resulting in a loss of evidence to the accused, we have recognized a constitutional violation only when loss of the evidence prejudiced the defense."[57] While "prejudice may take the form of . . . impairment of the ability to mount a defense,"[58] Schachter fails to demonstrate that his defense was prejudice by his delayed receipt of discovery or his inability to get further surveillance footage. As the Nevada Supreme Court reasonably noted, "even if the surveillance video showed Schachter entering with the backpack, he cannot demonstrate prejudice because he would still be guilty of attempted robbery for the items in the backpack when he exited the store without paying."[59]

Turning to Ground 3a, as was explained previously, the Nevada Supreme Court noted that "Schachter . . . does not allege that he did not steal the other items found in the backpack after he left the store."[60] Although Schachter disputed that he stole the other items in the backpack before and during the trial, his fast track statement[61] and fast track reply[62] to the Nevada Supreme Court failed to allege these facts, instead focusing only on the backpack. Thus,

---

[57] *United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982).

[58] *Id.* at 869.

[59] ECF No. 15-28 at 4.

[60] *Id.*

[61] *See* ECF No. 15-15 at 6 ("Throughout the proceedings, Mr. Schachter's defense was that he entered the store with a customized backpack already in his possession."); at 11 ("Mr. Schachter requested that the State produce video footage of him entering the store for the purpose of demonstrating that the backpack allegedly taken from Wal-Mart was in his possession upon entrance.").

[62] *See* ECF No. 15-24 at 5–6 ("Proof that the backpack was modified by or belonged to Mr. Schachter would have factually eliminated any claim that he attempted to take the backpack from Wal-Mart by force."); at 8 ("Here, Officer West did not use reasonable diligence to secure the allegedly stolen property. Despite handling the property during his investigation, the officer made no effort to collect the backpack and left it in Wal-Mart's custody.").

it cannot be concluded that the Nevada Supreme Court's decision to deny Schachter relief "was based on an unreasonable determination of the facts."[63]

Accordingly, because the Nevada Supreme Court reasonably determined that Schachter's claim lacked merit and did not base this decision on an unreasonable determination of the facts, I deny Schachter federal habeas relief for Grounds 1 and 3a.

### 2. *Grounds 2 and 3b—the backpack*

In Ground 2, Schachter alleges that his federal constitutional rights were violated when the police failed to collect and preserve the backpack.[64] Schachter elaborates that this failure prevented him from demonstrating that the backpack was purchased before he entered the store and prevented him from impeaching Monroy's testimony that he saw Schachter take the backpack.[65] Relatedly, in Ground 3b, Schachter argues that his conviction is invalid because establishing that the backpack was not stolen would have impeached Monroy's credibility.[66]

In affirming Schachter's judgment of conviction, the Nevada Supreme Court held:

> Schachter claims that the district court erred by denying his motion to dismiss after it determined that the State's failure to collect evidence (the backpack) was the result of mere negligence. Schachter argues that, because the police were statutorily required to secure the alleged stolen property pursuant to NRS 205.295, the failure to collect was the result of gross negligence. *See Daniels v. State*, 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998) (articulating the two-part test for a failure-to-collect claim as a demonstration that the evidence was material and whether the failure to collect was the result of negligence, gross negligence, or bad faith). The district court found that the backpack was material evidence, but did not explain why.
>
> We disagree that the backpack was material. *See State v. Ware*, 881 P.2d 679, 685 (N.M. 1994) ("The determination of evidence materiality is a question of law for the court."). Evidence is material where "there is a reasonable probability

---

[63] 28 U.S.C. § 2254(d)(2).

[64] ECF No. 5 at 9; ECF No. 24 at 9.

[65] ECF No. 5 at 6, 10.

[66] ECF No. 5 at 12.

12

that, had the evidence been available to the defense, the result of the proceedings would have been different." *Daniels*, 114 Nev. at 267, 956 P.2d at 115. Schachter wanted the backpack to show that he customized it and thus, could not have stolen it. Yet, for the reasons stated above, this showing would not have changed the outcome of the proceedings because, whether the backpack was his or not, it still contained items he stole. As he failed to demonstrate that the backpack was material, we need not consider whether the police's actions constituted negligence or gross negligence. *See id.* ("*If the evidence was material*, then the court must determine whether the failure to gather evidence was the result of mere negligence, gross negligence, or a bad faith attempt to prejudice the defendant's case." (emphasis added)). Accordingly, we conclude that the district court did not abuse its discretion by denying Schachter's motion to dismiss. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) ("If a judgment or order of a trial court reaches the right result, although it is based on an incorrect ground, the judgment or order will be affirmed on appeal.").[67]

I find that the Nevada Supreme Court's rejection of Schachter's claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. Before trial, Schachter moved to dismiss the charges against him due to the State's failure to preserve material, exculpatory evidence—the backpack and the items inside the backpack.[68] Schachter's motion was based on Nev. Rev. Stat. § 205.295 and *Arizona v. Youngblood*, 488 U.S. 51 (1988).[69] Schachter also moved "for the production of 'replacement' and/or 'substitute' lost/destroyed evidence."[70] In this latter motion, he also argued, in part, that "the charges should be dismissed upon a showing of bad faith in failing to safekeep the property and the exculpatory nature of the property."[71] In response to Schachter's motions, the State explained that the backpack and items in the backpack "were not lost/destroyed by the police or the State, they were restocked by Walmart pursuant to company

---

[67] ECF No. 15-28 at 4–5.
[68] ECF No. 13-15.
[69] ECF No. 13-34 at 5, 8.
[70] ECF No. 13-20.
[71] *Id.* at 3.

policy."[72]  Following oral argument, the state district court denied Schachter's motions "with leave to renew as a directed verdict at the conclusion of the evidence."[73]  The state district court later entered a written order denying Schachter's motions, explaining that "Schachter fails to distinguish between collection and preservation of evidence."[74]  The state district court found that Schachter "met his burden of proving these items of evidence [were] material" but further found, although "the State . . . negligently failed to collect potentially exculpatory evidence," "[t]he facts of this case show no indication that the failure to collect these items was a result of any bad faith on the part of the State in an effort to make this evidence unavailable to the defense."[75]  Instead, the state district court explained that "Schachter may examine the State's witnesses about these investigative deficiencies at trial."[76]

During Schachter's trial, Officer Terry West testified that he responded to Walmart on June 9, 2014, due to a report of "two subjects fighting in the parking lot."[77]  Officer West observed the backpack allegedly stolen by Schachter and explained that "[i]t was new [and] was still very compressed, flat.  There wasn't [sic] any tags or anything on it.  It didn't have any mark, stains, tears anything like that."[78]  The backpack also did not have any personal identifying information.[79]  Officer West then explained why the backpack was not recovered:

> So when we respond to say like Walmart for examination examination [sic] in this case they recover their own products.  It's not a unique [item] per se that

---

[72] ECF No. 13-33 at 4.

[73] ECF No. 13-34 at 11.

[74] ECF No. 14 at 4.

[75] *Id.* at 5-6.

[76] *Id.* at 6.

[77] ECF No. 14-10 at 83–84.

[78] *Id.* at 86.

[79] *Id.*

14

somebody brought in that doesn't belong to them. They had already recovered their losses. And we get an itemized receipt showing what those losses were, so we're not a detriment to their products. If we collected everything that was stolen from grocery stores our evidence would be overloaded enormously. Petit larcenies and grand larcenies and other calls of theft are a big part of what we respond to. So basically our procedure is to collect an itemized receipt of what was taken and as well as video surveillance if it's available. And other things like that. Now if we recover the product later on, say away from the store then most times we will collect it if we can't return it to the owner.[80]

The following colloquy then occurred between Schachter and Officer West during cross-examination:

> Q. You said it's procedure not to recover the property if it's either like new or it's Walmart property. Is that something specific to Walmart or to all retail?
>
> A. It doesn't necessarily condition [sic] on the condition of the item, it's whether it's recovered by them prior to our arrival. It was already recovered prior to us getting there. They had recovered their own property.
>
> Q. Did you think it was evidence?
>
> A. That's why it was - - yes, it's evidence.
>
> Q. But not evidence that should be recovered or retained by you, by the police department, when I say you?
>
> A. So it's recovered by them, prior to our arrival. And it's not a unique item. It's an item that you could go to Walmart and get off of their shelf right now. If you needed a physical did I play for that item [sic].
>
> Q. What about as to examination, fingerprints, or maybe there was another price tag from a different store, anything like that?
>
> A. Well, if that was located in there, then we would have collected that. If it was something not unique to Walmart. And Alex identified that as being their store property, that they had recovered that.
>
> Q. So the individual items that you say were in the backpack, like the hair dye, that's unique to Walmart, is that what you're saying?

---

[80] *Id.* at 87.

15

| | | |
|---|---|---|
| A. | | No, it's not unique, it's not something else that was brought into the store that's not theirs. |
| Q. | | But it could have been bought at - - across the street at Walgreens? |
| A. | | Sure. It could have been bought at any Walmart across the United States. |
| Q. | | Exactly. So that's Reno Police Department policy? |
| A. | | There's no policy outlining it as far as the evidence collection based on the crime. If it's recovered by them, which is the same reason we don't keep stolen cars in evidence for months, because people need their stuff back. Okay. So if it was something say that had been brought in from the outside that wasn't Walmart's, then we would have collected that, because that didn't belong to Walmart and Alex is a representative for Walmart. |

. . .

Q. So you never got permission either from a supervisor or from the district attorney, anything as to releasing the property that was alleged to be stolen?

A. I didn't release the property. They'd already recovered it. That's where I think you're having trouble differentiating. Because if we recover the property then we release it. But if the property is recovered by somebody else and it's their property, we don't release it to them, because they have custody of it.

Q. That's what I was asking you, if it ever was in your custody while you were looking through the bag?

A. If it was never in my custody I never held the backpack, because that's - - I mean, in my custody I take in my custody as nobody else has any permission to touch it.[81]

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness" which has been interpreted as "requir[ing] that criminal defendants be afforded a meaningful opportunity to present a complete defense."[82] The State's loss or destruction of potentially exculpatory evidence violates due

---

[81] *Id.* at 97–98, 101.

[82] *California v. Trombetta*, 467 U.S. 479, 485 (1984).

16

…

process only when the evidence "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[83]  Moreover, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[84]  "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."[85]  Even negligence in failing to preserve potentially useful evidence is not sufficient to constitute bad faith and does not violate due process.[86]

To be sure, it is apparent that law enforcement acted negligently in failing to preserve the backpack.  Nev. Rev. Stat. § 205.295 provides that "[t]he officer arresting any person charged as principal or accessory in any robbery or larceny shall use reasonable diligence to secure the property alleged to have been stolen."  Officer West failed to comply with Nev. Rev. Stat. § 205.295.  However, it cannot be determined that this failure resulted in a violation of Schachter's due process rights.  Indeed, it cannot be determined that the backpack "possess[ed] an exculpatory value that was apparent before the evidence was destroyed."[87]  Officer West testified that the backpack looked new, was still compressed, did not have any marks or tears,

---

[83] *Id.* at 489; *see also United States v. Bingham*, 653 F.3d 983, 994 (9th Cir. 2011).

[84] *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004).

[85] *Youngblood*, 488 U.S. at 56 n.*.

[86] *Id.* at 58; *see also United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) ("Bad faith requires more than mere negligence or recklessness.").

[87] *Trombetta*, 467 U.S. at 485.

and did not contain any personal identifying information.[88] Additionally, Monroy told Officer West that the backpack was Walmart's property, not Schachter's.[89]

Turning to Ground 3b, Monroy testified that Schachter did not have a backpack on when Monroy first observed him, and that Monroy saw Schachter put the backpack into his cart.[90] Even if Schachter had been able to present evidence that the backpack was not stolen and, thus, would have impeached this testimony by Monroy, Schachter fails to demonstrate that his conviction was invalid, as he contends. Video surveillance footage of "Schachter in certain areas of the store where the surveillance cameras were able to capture him" was entered into evidence.[91] This footage showed Schachter "selecting [an] Icy Hot electric relief pad," the backpack in Schachter's cart, and Schachter looking at heating pads.[92] Accordingly, Schachter's robbery conviction was corroborated by other evidence.[93]

Therefore, because the Nevada Supreme Court reasonably determined that Schachter's claim regarding the collection of the backpack lacked merit, I deny Schachter federal habeas relief for Grounds 2 and 3b.

---

[88] ECF No. 14-10 at 86.

[89] *Id.* at 98.

[90] ECF No. 14-8 at 40, 42.

[91] *Id.* at 43.

[92] *Id.* at 80–82.

[93] *See, e.g. Smith v. Cain*, 565 U.S. 73, 76 (2012) ("[O]bserv[ing] that evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict.").

### C.   Certificate of Appealability

Before a federal habeas petitioner can appeal the district court's denial of his petition, he must obtain a certificate of appealability. To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[94] "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[95] Because I have rejected Schachter's constitutional claims on their merits, and he has not shown that this assessment of his claims is debatable or wrong, I find that a certificate of appealability is unwarranted in this case and I decline to issue one.

## Conclusion

IT IS THEREFORE ORDERED that the petition **[ECF No. 5] is DENIED**, and because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated:  August 4, 2020.

_____
U.S. District Judge

---

[94] 28 U.S.C. § 2253(c).

[95] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).